UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMART MODULAR TECHNOLOGIES, INC., <br><br> Plaintiff and Counterdefendant, <br><br> v. <br><br> NETLIST, INC., <br><br> Defendant and Counterclaimant. | No. 2:12-cv-02319-TLN-EFB <br><br> **ORDER DENYING DEFENDANT'S MOTION TO REINSTITUTE STAY** |

This matter is before the Court pursuant to Defendant and Counterclaimant Netlist, Inc.'s ("Defendant") Motion to Reinstitute Stay. (ECF No. 176.) Plaintiff and Counterdefendant Smart Modular Technologies, Inc. ("Plaintiff") filed an opposition (ECF No. 177), and Defendant has replied (ECF No. 179). For the reasons set forth below, the Court hereby DENIES Defendant's Motion to Reinstitute Stay. (ECF No. 176.)

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is the assignee and owner of all rights, title, and interest in U.S. Patent Number 8,250,295 ("the '295 Patent") entitled "Multi-Rank Memory Module That Emulates A Memory Module Having A Different Number of Ranks." (ECF No. 1 at 7.) The '295 Patent was issued on August 21, 2012, by the United States Patent and Trademark Office ("PTO"). The Patent

1

involves a memory module with rank multiplication capability.  It enables a memory module to provide a given memory capacity using greater numbers of lower-capacity, lower-cost Dynamic Random Access Memory ("DRAM") devices, as opposed to using lower numbers of higher-capacity, higher-cost-DRAM devices that would otherwise be imposed by memory controller limitations.  (*See* Compl., ECF No. 1.)  The '295 Patent is composed of eight claims.  (ECF No. 1 at 7.)  Plaintiff alleges that Defendant's Hypercloud memory module products infringe at least one of the '295 Patent's seven claims.  (ECF No. 22 at 6.)  Infringement of at least one of the claims means that the entire patent is being infringed.  Thus, Plaintiff alleges that Defendant is infringing upon Plaintiff's exclusive right to exclude others from making, using, offering to sell, and selling articles covered by the '295 Patent.  Defendant brought counterclaims alleging that the '295 Patent is invalid.  (*See* Answer and Countercl., ECF No. 49.)

On September 15, 2012, Defendant filed an *inter partes* reexamination ("IPR") request with the Patent and Trade Office (hereinafter "PTO") proposing claims 1 through 7 of the '295 Patent be rejected on six different combinations of prior art.  (ECF No. 107.)  On December 7, 2012, the PTO granted Defendant's request and ordered reexamination.  (Transmittal of Communication to Third Party Requester IPR, ECF No. 107-3.)

On December 13, 2012, Defendant filed a Motion to Stay Pending Patent Reexamination. (ECF No. 107.)  On May 30, 2013, this Court ordered the case stayed.  (ECF No. 154.)  In its order to stay, the Court noted: (1) the litigation was in its early stages; (2) the PTO proceedings would simplify issues for trial; and (3) Plaintiff would not be unduly prejudiced by the stay. (ECF No. 154.)  Thereafter, on April 29, 2014, the PTO examiner issued an Action Closing Prosecution ("ACP") upholding the patentability of all seven challenged claims.  (ECF No. 165.) On August 4, 2015, the PTO examiner issued a Right of Appeal Notice ("RAN") concluding the reexamination and allowing Defendant to appeal to the Patent Trial and Appeal Board ("PTAB"). (ECF No. 165.)

On November 4, 2015, Defendant filed its opening appellate brief.  (ECF No. 165.) Shortly thereafter, on February 25, 2016, the PTO examiner issued an answer to Defendant's brief in which the examiner incorporated the RAN and determined that there were no new grounds to

reject the claims of the '295 Patent. (ECF No. 165.) On May 5, 2016, Plaintiff filed a Motion to Lift Stay. (ECF No. 165.) On September 20, 2016, the Court ordered the stay lifted. (ECF No. 173.) In its decision to lift the stay, the Court considered three factors and found the PTAB's confirmation of Plaintiff's patent shifted the analysis to weigh in favor of lifting the stay.

On March 23, 2017, Defendant filed a Motion to Reinstitute Stay because the PTAB "reversed the patent examiner's *inter partes* reexamination decision and rejected" claims 1 through 7 of the '295 Patent. (ECF No. 176 at 1.) Defendant argues because the PTAB "rejected all of the asserted claims as unpatentable over the prior art," the '295 Patent should not be subjected to litigation at this time to conserve the Court's and parties' resources. (ECF No. 176 at 2–5.)

**II.    STANDARD OF LAW**

When patentability is at issue, 35 U.S.C. § 318 allows a party to request a stay of litigation upon an order of inter partes reexamination of the patent. *See Proctor & Gamble*, 549 F.3d 842, 848 (Fed. Cir. 2008). "Congress instituted the reexamination process to shift the burden of reexamination of patent validity from the courts to the PTO." H.R. Rep. No. 1307, 96th Cong., 2d Sess., pt. 7 at 4 (1980), reprinted in 1980 U.S.C.C.A.N. 6460. Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the PTO's specialized expertise to reduce costly and timely litigation." *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002). Thus, courts have the authority to order a stay pending conclusion of a PTO reexamination. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) (holding the court's power to stay proceedings secondary to the inherent power the court has to control its docket). "While courts are not required to stay judicial proceedings pending reexamination of a patent, a stay for purposes of reexamination is within the district court's discretion." *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1110 (N.D. Cal. 2007); *see also Medichem, S.A. v Rolabo, S.L.*, 353 F.3d 928, 936 (Fed. Cir. 2003) (holding a stay of proceedings in the district court pending the outcome of the parallel proceedings in the PTO remains an option within the district court's discretion).

Some courts have noted that there is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination." *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994). Other courts have recognized that a stay pending reexamination must be approached with caution because it can prolong the proceeding without achieving sufficient benefits. *See Eakin Enters. v. Specialty Sales LLC*, Civ. No. 11-02008 LJO SKO, 2012 WL 2445154, at *10 (E.D. Cal. June 26, 2012). "In determining whether to stay [a] case pending reexamination, the [c]ourt considers the following factors: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Telemac*, 450 F. Supp. 2d at 1110 (citations omitted).

### III. ANALYSIS

Defendant argues the stay should be reinstituted because the reasons for lifting the stay are no longer applicable since the PTAB "reversed the patent examiner's . . . decision and rejected all asserted claims" of the '295 Patent. (ECF No. 176 at 1.) Defendant argues the stay is necessary to conserve the Court's and parties' resources until the PTAB makes a final ruling on the '295 Patent. (ECF No. 176 at 3.) Plaintiff argues the stay should not be reinstituted because the PTAB has not released a final decision, thus Plaintiff "should not be precluded from enforcing its valid patent against an infringing competitor." (ECF No. 177 at 1.) Plaintiff argues the longer litigation is postponed the more difficult it will be to recover redress from Defendant's infringement, thus the stay should not be reinstituted to avoid prejudice to Plaintiff. (ECF No. 177 at 5.) The Court considers the aforementioned three *Telemac* factors when determining whether to reinstitute the stay pending reexamination. *Telemac*, 450 F. Supp. 2d at 1111.

A. <u>Whether Discovery is Complete and Whether a Trial Date Has Been Set</u>

First, the Court considers the stage of the trial and the amount of discovery conducted by both parties. Defendant argues the Parties should not devote time and resources to discovery when the PTAB is still reviewing the '295 Patent's validity. (ECF No. 176 at 3.) Because the case has been stayed for over three and a half years, the case is still in its infancy and minimal

4

discovery has occurred. (Order, ECF No. 173, at 4–5; ECF No. 176 at 4.) This factor typically favors granting the stay. *See AT&T Intellectual Prop. I v. Tivo, Inc.*, 744 F. Supp. 2d 1049, 1052 (N.D. Cal. 2011); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995); *ASCII Corp. v. STF Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994). When granting a stay, the Court "must weigh competing interest and maintain an even balance" between the hardship of Plaintiff and Defendant. *Landis*, 299 U.S. at 254–55.

Defendant strongly contends the Court should grant the stay to preserve resources and time while the PTAB makes a final ruling on the '295 Patent. (ECF No. 176 at 3.) Unlike the parties in *Telemac*, the parties here are not close to the completion of fact discovery and have only undergone limited discovery for the previous motions. (ECF No. 173 at 4); *Telemac*, 450 F. Supp. 2d at 1111. Plaintiff argues the length of the previous stay has only made this case more complicated and as more time passes, "witnesses' recollections will continue to fade, documentary evidence possessed by the parties will require continued storage, and evidence in the possession of non-parties may potentially be lost." (ECF No. 177 at 3.) Both parties provided valid considerations the Court must weigh when making this decision. *Landis*, 299 U.S. at 254–55. The reasons are evenly matched such that the Court finds this factor to be neutral.

B. <u>Whether a Stay Will Simplify the Issues in Question and Trial of the Case</u>

The second factor asks whether a stay will allow the PTAB's final decision to simplify the issues in the case by concluding the status of the '295 Patent. *Telemac Corp.*, 450 F. Supp. 2d at 1111. Defendant argues the PTAB's reversal of the examiner's decision proves the PTAB's final ruling on the seven claims will determine the outcome of this case . (ECF No. 179 at 2.) The PTAB concluded the original patent examiner "erred in confirming" claims 1 through 7. (ECF No. 176-1, Ex. A at 31.) The PTAB presented Plaintiff with time to respond to their decision by either reopening prosecution or requesting a rehearing. (ECF No. 176-1, Ex. A at 31–32.) Plaintiff chose to reopen prosecution. (ECF No. 176-1, Ex. C.) Plaintiff argues they have "submitted the applicable evidence and addressed the PTAB's concerns." (ECF No. 177 at 1.) Defendant responds by arguing Plaintiff is ignoring or downplaying "the critical fact that all of the claims asserted against Netlist have once again been rejected on appeal." (ECF No. 179 at 1.)

In the previous order lifting the stay, the Court noted the PTAB affirms the PTO examiner's decision in a majority of cases. (ECF No. 173 at 5.) Defendant argues because "the PTAB reversed the examiner's decision" for all claims the Court's prediction was incorrect and the stay should be reinstituted. (ECF No. 176 at 3.) The Court can grant a stay when reexamination will "eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). Here, claims 1 through 7 are heavily contested by both parties and based on the procedural history of the '295 Patent it is difficult to determine which party will prevail during the IPR. (*See* ECF No. 177 at 2; ECF No. 179 at 1.) The uncertainty of the claims weighs in favor of granting the reinstitution of the stay. *Telemac Corp.*, 450 F. Supp. 2d at 1110–11.

### C. Whether a Stay Would Unduly Prejudice or Present a Clear Tactical Disadvantage to Plaintiff

Finally, the Court must consider whether the Plaintiff is unduly prejudiced if the stay is reinstituted. *Telemac*, 450 F. Supp. 2d at 1111. Plaintiff emphasizes the three and a half year delay to the litigation and the upcoming expiration date of the '295 patent in 2024. (ECF No. 177 at 5.) Defendant argues the delay is irrelevant if the '295 Patent is deemed invalid and if the patent is valid, Plaintiff can collect money damages for patent infringement. (ECF No. 179 at 3–4.)

In the order lifting the stay, the Court addressed the difficulty in calculating money damages for patent infringement. (ECF No. 173 at 6) (citing *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal., July 28, 2011).); *see Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1326–27 (Fed. Cir. 2008) (explaining money damages are not always sufficient because "[t]he essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent"). Nothing in Defendant's argument changes the Court's view of damages. Additionally, Plaintiff argues Defendant sold, shipped, and profited from their HyperCloud product shortly after this litigation was filed. (ECF No. 177 at 5.) "Staying a case while such harm is ongoing usually prejudices the patentee that

6

seeks timely enforcement of its right to exclude." *Avago*, 2011 WL 3267768 at *5.  Since money damages are not always sufficient to remedy a plaintiff's harm, the Court will consider this factor in favor of not reinstituting the stay.

Plaintiff argues only one argument remains pending before the Patent Office because Defendant raised the argument "for the first time on a *de novo* appeal." (ECF No. 177 at 4.)  In *Telemac*, the District Court found the defendants to be "taking tactical advantage of opportunities for delay," which appears to mirror what is happening here.  *Telemac*, 450 F. Supp. 2d at 1111.  Plaintiff claims they have submitted the evidence to clear the argument brought by Defendant, however, the delay will cause Plaintiff further harm.  (ECF No. 177 at 4.)  As Defendant continues to capitalize on the contested patent, a stay will only further bar Plaintiff from recovering their potential earnings.  Considering this additional delay tactic the prejudice to Plaintiff outweighs the Court's desire to simplify the issues at trial.  Accordingly, the factors when weighed favor denying the motion to reinstitute the stay.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the factors, on balance, weigh in favor of denying Defendant's Motion to Reinstitute Stay.  The PTAB's decision regarding the '295 Patent will be beneficial to simplify the contested patent, however, Plaintiff is unduly prejudiced by the immense delay of the litigation.  Thus, Defendant's Motion to Reinstitute Stay (ECF No. 176) is hereby DENIED.

IT IS SO ORDERED.

Dated: June 26, 2017

Troy L. Nunley
United States District Judge