UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMART MODULAR TECHNOLOGIES, INC., <br><br> Plaintiff and Counterdefendant, <br><br> v. <br><br> NETLIST, INC., <br><br> Defendant and Counterclaimant. | No. 2:12-cv-02319-TLN-EFB <br><br> **ORDER** |

The matter is before the Court on Plaintiff and Counterdefendant Smart Modular Technologies, Inc.'s ("Plaintiff") Motion to Dismiss, Motion to Strike and Motion for Partial Judgment on the Pleadings or in that alternative Partial Summary Judgment (ECF No. 66). Defendant and Counterclaimant Netlist, Inc. ("Defendant") opposes the motion. (ECF No. 80.) Plaintiff filed a reply. (ECF No. 140.) Having reviewed the arguments raised by both parties and for the reasons set forth below, the Court hereby GRANTS IN PART and DENIES IN PART Plaintiff's Motion (ECF No. 66).

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is the assignee and owner of all rights, title, and interest in U.S. Patent Number 8,250,295 ("the '295 Patent") entitled "Multi-Rank Memory Module That Emulates A Memory

1

Module Having A Different Number of Ranks." (Compl., ECF No. 1 at 7.) The '295 Patent was issued on August 21, 2012, by the United States Patent and Trademark Office ("PTO"). The Patent involves a memory module with rank multiplication capability. It enables a memory module to provide a given memory capacity using greater numbers of lower-capacity, lower-cost Dynamic Random Access Memory ("DRAM") devices, as opposed to using lower numbers of higher-capacity, higher-cost-DRAM devices that would otherwise be imposed by memory controller limitations. (*See* ECF No. 1.) The '295 Patent is composed of eight claims. (ECF No. 1 at 7.) Plaintiff alleges Defendant's Hypercloud memory module products infringe at least one of claims one through seven of the '295 Patent. (ECF No. 22 at 6.) Infringement of at least one of the claims means that the entire patent is being infringed. Thus, Plaintiff alleges Defendant is infringing upon Plaintiff's exclusive right to exclude others from making, using, offering to sell, and selling articles covered by the '295 Patent.

Defendant brought counterclaims alleging the '295 Patent is invalid. (*See* Answer and Countercl., ECF No. 49.) Defendant alleges it has been a member of the Joint Electron Device Engineering Council ("JEDEC") since 2000. (Counterclaims ¶ 16.) The JEDEC is a standard-setting organization designed to facilitate standardization within the solid-state, microelectronics, and associated industries.[1] (Req. for Judicial Notice, ECF No. 68, Ex. 1 at 1 ("JEDEC Manual").) The JEDEC is committed to creating, publishing, and promoting global acceptance of standards, and providing a forum for technical exchange on industry topics. (JEDEC Manual 1.1.) JEDEC established committees to perform tasks for the JEDEC including developing proposed standards, guideline, registrations, and related technical publications for the committee. (JEDEC Manual 2.1.) Committees are divided into two categories, service committees and product committees. (JEDEC Manual 2.) Product committees are designated with the first digit of the two digit

---

[1] Plaintiff requests the Court take judicial notice of the JEDEC Manual of Organization and Procedure and proposed JEDEC Standard JESD82-xx. (*See* Req. for Judicial Notice, ECF No. 69.) Defendant does not oppose the request. These documents are quoted in part in the complaint. A court "may consider the full texts of documents that the complaint only quotes in part." *Delgado v. United Facilities, Inc.*, No. 2:11-cv-00485-MCE-DAD, 2012 WL 10717266, at *4 (E.D. Cal. Feb. 21, 2012). Accordingly, the Court hereby GRANTS Plaintiff's Request for Judicial Notice (ECF No. 69).

designator being 2 or higher. (JEDEC Manual 2.) Defendant is a member of several JEDEC committees including two product committees, JC-40 and JC-45. (Counterclaims ¶ 16.)

Defendant alleges Plaintiff was a member of JEDEC and several committees including JC-40 and JC-45 at all times relevant to this action. (Counterclaims ¶ 17.) JEDEC enforces a patent policy requiring committee members to "disclose potentially essential patents . . . and to offer to license their essential patent claims to all potential licenses on RAND terms and conditions." (JEDEC Manual 8.2.2.1.) Defendant alleges Plaintiff breached its duty to disclose the '295 patent by not disclosing the patent during the eight years the patent application was pending before the PTO. (Counterclaims ¶ 19.) Defendant alleges the '295 patent application was filed on January 5, 2004, and Plaintiff did not disclose the patent until about August 27, 2012, when it submitted License Assurance/Disclosure form to the JEDEC. (Counterclaims ¶¶ 19–20.) Defendant alleges that under the JEDEC policies Plaintiff was also required to offer Defendant a license to use the '295 patent, but failed to do so. (Counterclaims ¶ 21.)

As a result of Plaintiff's alleged violations of JEDEC Policy, Defendant asserts six counterclaims against Plaintiff: (1) Declaratory Judgment of Noninfringement of the '295 patent; (2) Declaratory Judgment of Invalidity of the '295 patent; (3) Unenforceability Based on patent Misuse; (4) Negligent Misrepresentation; (5) Equitable Estoppel; and (6) Breach of Contract. (*See* ECF No. 49.) Plaintiff moves to dismiss Defendant's second, third, fifth and sixth counterclaims. (*See* ECF No. 67.) Plaintiff also moves to strike the defenses associated with the above counterclaims as well as Defendant's affirmative defense of intervening rights and general reservation of defenses. (*See* ECF No. 67.)

**II.    STANDARD OF LAW**

A. Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." On a motion to dismiss, the factual allegations of the complaint are assumed to be true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the well-pleaded allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*,

373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2009)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (citing *Twombly*, 550 U.S. at 556).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Additionally, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

4

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Federal Rule of Civil Procedure 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Rule 12(f) motions, however, are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Id.* Unless it would prejudice the opposing party, courts freely grant leave to amend stricken pleadings. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979); *see also* Fed. R. Civ. P. 15(a)(2). If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving the assessment of the sufficiency of the allegations for adjudication on the merits after proper development of the factual nature of the claims through discovery. *See generally Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010).

///

5

### III.   ANALYSIS

Plaintiff moves to dismiss Defendant's third and sixth counterclaims which are based on alleged violations of JEDEC's patent policy. Plaintiff argues Defendant cannot allege it uses the standard upon which Plaintiff licenses use of the '295 patent and therefore it was not required to offer Defendant a license prior to filing suit. Plaintiff also seeks to strike the associated affirmative defenses because they are similarly based on the premise that Plaintiff was required to offer Defendant a license.

Plaintiff moves to dismiss Defendant's invalidity counterclaim and strike its associated affirmative defense. Plaintiff argues Defendant's second counterclaim consists of mere legal conclusions and its affirmative defense fairs no better. Plaintiff seeks to strike Defendants intervening rights affirmative defense because the defense relies on 35 U.S.C. § 252 which permits intervening rights only for reissued patents. Plaintiff asserts the patent has not been reissued and therefore no intervening rights exist under Section 252. Plaintiff also moves to strike Defendant's general reservation clause, reserving the right to assert affirmative defenses at a later date. Finally, Plaintiff moves to dismiss Defendants fifth counterclaim for equitable estoppel. Plaintiff contends equitable estoppel is not a claim for relief and thus cannot be asserted as a counterclaim. The Court addresses each of Plaintiff's arguments in turn.

#### A.   Counterclaims Three and Six: JEDEC Counterclaims and Associated Defenses

Plaintiff argues the Court should dismiss Defendant's JEDEC related claims and defenses because Defendant did not and cannot plead that it qualifies for a JEDEC license to use the '295 patent. (ECF No. 67 at 6.) Specifically, Plaintiff moves for judgment on the pleadings for counterclaims three and six and moves to strike Defendant's fifth and sixth affirmative defenses to the extent they rely on the JEDEC licensing commitment. (ECF No. 67 at 8–11.) In the alternative, Plaintiff seeks summary judgment on the counterclaims. (ECF No. 67 at 11–14.)

##### i.   *Judgment on Counterclaims Three and Six*

Defendant's third and sixth counterclaims for patent misuse and breach of contract, respectively, rest on two allegations: (1) Plaintiff did not timely disclose the '295 patent to the JEDEC committee; and (2) Plaintiff was required to offer Defendant a license to use the patent

prior to bringing a lawsuit, but failed to do so.  (Counterclaims ¶ 22.)  In its motion, Plaintiff argues it was not required to license the '295 patent to Defendant.  (ECF No. 67 at 10.)  Plaintiff asserts in its reply that it did not violate the JEDEC's patent disclosure policy.  (ECF No. 140 at 8–9.)

Federal Rule of Civil Procedure 12(c) permits a party to seek judgment on the basis of plaintiff's failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(h)(2)(B).  "Such a motion is essentially equivalent to a Rule 12 (b)(6) motion to dismiss, so a district court may dispose of the motion by dismissal rather than judgment." *Technology Licensing Corp. v. Technicolor USA, Inc.*, No. CIV 2:03-1329 WBS EFB, 2010 WL 4070208, at *1 (E.D. Cal. Oct. 18, 2010) (citations omitted).

### a. License Requirement

Plaintiff contends the licensing obligation Defendant uses as the base for its patent misuse and breach of contract claims requires Plaintiff to offer a license to "applicants desiring to utilize the license for the purpose of implementing the JEDEC Standard."  (ECF No. 67 at 9.)  Defendant alleges the '295 patent uses the JEDEC standard "JESD82-xx, JC40.4, JC45.4, MB Specification, JESD82-20A."  (Counterclaims ¶ 20.)  Plaintiff asserts Defendant has not and cannot plead its products implement the JESD82-xx standard.  (ECF No. 67 at 9.)  Defendant asserts that it need not plead that it utilizes the appropriate standard because under the JEDEC manual and procedures any standard would qualify for a RAND license.  (ECF No. 80 at 10.)

Having reviewed the entirety of the JEDEC manual, the Court finds that both parties are partially correct.  The JEDEC manual details a committee member's obligations under the RAND Patent Licensing Commitment.  (*See* Jensen Decl., ECF No. 68, Ex. 1 at 25.)  "Th[e] commitment applies to any standard that was pending in the committee or task group while the Committee Member Participated in that committee or task group."  (JEDEC Manual 8.2.4.)  A Committee Member may also "not agree to grant a license to all other Potential Licensees under such Potential Licensee's Essential Patent Claims of that Standard on RAND term and conditions for the approved Standard."  (JEDEC Manual 8.2.4.)

Defendant is incorrect that use of "<u>any</u> standard" means Plaintiff is "obligated to offer a

RAND license to [Defendant] before filing this lawsuit." (ECF No. 80 at 10 (emphasis in original).) Plaintiff is not required to offer a license for any standard, but any standard that was *pending in the committee when Plaintiff was a member of that committee*. Defendant alleges it "has been a member of JEDEC since 2000 and a member of several committees including JC-40 and JC-45." (Counterclaims ¶ 16.) Defendant further alleges "[Plaintiff] was a member of the JEDEC and a member of several JEDEC committees, including JC-40 and JC-45." (Counterclaims ¶ 17.) Plaintiff's membership in the same committees as Defendant does not mean the standard was pending in the committee they shared. Furthermore, Defendant states it uses a separate standard specified as RDIMM. (ECF No. 80 at 10.) Thus, Defendant would have had to plead that the RDIMM standard was implemented in one of the committees in which Plaintiff was a member during the time Plaintiff was a member. Defendant pleads no such allegations.

### b. Duty to Disclose

A duty to disclose may arise out of membership in a standard-setting organization. *Rambus Inc. v. Infineon Technologies Ag*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Qualcomm Incorporated v. Broadcom Corp.*, 548 F.3d 1004, 1012 (Fed. Cir. 2008). The scope of the duty may be defined by the JEDEC's written policy and can also be implied by the conduct of JEDEC's members. *Rambus*, 318 F.3d at 1098. The existence of a duty to disclose is a question of law with factual underpinnings. *Qualcomm*, 548 F.3d at 1012.

Defendant alleges Plaintiff violated the JEDEC's patent disclosure policy and therefore the patent should be unenforceable. (Counterclaims ¶¶ 19–23.) In its opposition, Defendant asserts Plaintiff reads the claims in a vacuum and does not address the issue of its untimely patent disclosure. (ECF No. 80 at 8–11.) Defendant cites *Qualcomm* for the proposition that Defendant may bring a claim for patent misuse for violations of JEDEC's standards. (ECF No. 80 at 10–11.) Plaintiff asserts *Qualcomm* allows the Court to make the patent unenforceable only against products implementing the JESD82-xx standard. (ECF No. 140 at 9.)

In *Qualcomm*, the Federal Circuit reviewed a district court's decision finding a patent unenforceable against the world because the patent holder violated a standard-setting

organization's duty to disclose. *Qualcomm*, 548 F.3d at 1008. The Federal Circuit upheld the district court's finding that a duty to disclose existed and rendered the patent unenforceable. *Id.* at 1019. However, the Federal Circuit held the patent could not be unenforceable against all potential infringers, but only against the products that were compliant with the given standard. *Id.* at 1026. As discussed above, Defendant fails to plead its product is compliant with the JESD82-xx standard for which Plaintiff's patent is licensed. Accordingly, Defendant's allegations do not adequately plead use of the described JEDEC standard such that the patent is unenforceable against Defendant's use.

For the foregoing reasons, Defendant has failed to adequately allege facts to support its counterclaims of patent misuse and breach of contract under either a duty to disclose or a license requirement. Accordingly, Defendant's third and sixth counterclaims are hereby DISMISSED. *See Technology Licensing*, 2010 WL 4070208, at *1 (explaining a court may dispose of a Rule 12(c) motion through dismissal).

## ii. Striking the Fifth and Sixth Defenses

Plaintiff seeks to strike Defendant's fifth defense (equitable defense) and sixth defense (no injunction) as insufficient. (ECF No. 67 at 11.) An affirmative defense is insufficient where it lacks merit "under any set of facts the defendant might allege." *McArdle v. AT&T Mobility LLC*, 657 F. Supp. 2d 1140, 1150 (N.D. Cal. 2009), *rev'd on other grounds by* 474 Fed. App. 515 (2012). Plaintiff contends the fifth and sixth defenses rely on the premise that Plaintiff was required to offer Defendant a RAND license prior to initiating litigation. (ECF No. 67 at 11.) Plaintiff argues Defendant could not plead any set of facts such that Plaintiff had to offer it a license because Defendant does not utilize the JESD82-xx standard. (ECF No. 67 at 11.)

As the Court discussed above, Defendant could plead that the RDIMM standard was implemented in one of the committees in which Plaintiff was a member during the time Plaintiff was a member. Plaintiff does not suggest that this is impossible. Accordingly, a set of facts exists that would require Plaintiff to offer Defendant a license. It cannot be said that the fifth and sixth defenses are insufficient. As a consequence, the Court hereby DENIES Plaintiff's motion to strike Defendant's fifth and sixth affirmative defenses.

B. Counterclaim Two: Invalidity and Associated Defense

Plaintiff moves to dismiss Defendant's second counterclaim for invalidity and to strike its second affirmative defense.[2] (ECF No. 67 at 15.) Plaintiff argues the invalidity counterclaim is comprised of legal conclusions and thus fails to state a claim. (ECF No. 67 at 15.) Defendant does not dispute that paragraph 14 consists of legal conclusions. Instead, Defendant contends Plaintiff focuses solely on one paragraph of the claim and does not take into consideration all of the factual allegations incorporated by reference from the rest of the countercomplaint and answer. (ECF No. 80 at 15.) Furthermore, Defendant asserts Exhibit A attached to the countercomplaint also "spells out the necessary factual allegations for Count Two." (ECF No. 80 at 15.)

A pleading is considered a shotgun pleading when a party pleads multiple claims and does not identify which specific facts are allocated to which claim. *See In re Mortgages Ltd.*, No. 2013 WL 1336830, at *12 (Bankr. D. Ariz. March 29, 2013); *Magulta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). Here, Defendant's second counterclaim is devoid of any factual statements which would provide notice to Plaintiff of what allegations give rise to an invalidity claim. Paragraph 11 incorporates by reference the preceding allegations of Defendant's counterclaims. However, even the factual allegations in the remainder of the counterclaims are minimal and without reference to specific facts. Defendant states that Exhibit A spells out the factual allegations, but counterclaim two does not reference Exhibit A. Even if Exhibit A was incorporated by reference and mentioned in counterclaim two, Defendant still has not identified which portions of Exhibit A would give rise to an invalidity counterclaim.

Accordingly, Defendant has failed to meet the pleading requirement of Federal Rule of Civil Procedure 8(a). The Court hereby DISMISSES without prejudice Defendant's second counterclaim and STRIKES Defendant's second affirmative defense for invalidity.

C. Fourth Affirmative Defense: Intervening Rights

Plaintiff requests the Court strike Defendant's fourth affirmative defense asserting

---

[2] The second affirmative defense is virtually identical to the second counterclaim. Courts have viewed the two in tandem when determining whether to dismiss a claim and strike an identical affirmative defense. *See Iconfind, Inc. v. Google, Inc.*, No. 2:11-cv-00319-GEB-JFM, 2011 WL 4505779, at *1 (E.D. Cal. Aug. 2, 2011).

intervening rights pursuant to 35 U.S.C. § 252. Section 252 grants protection from infringement when a product potentially infringes a patent reissued with modified or added claims. 35 U.S.C § 252. "Intervening rights originated as a defense against patents modified through reissue procedures." *Marine Polymer Technologies, Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1362 (Fed. Cir. 2012). However, intervening rights are now granted to *ex parte* and *inter partes* reexaminations. *See* 35 U.S.C. §§ 307(b), 316(b), respectively. Defendant has not asserted an intervening rights defense under either reexamination section. (ECF No. 140 at 10–11.) As Defendant has not asserted the '295 patent has been reissued, Defendant cannot not assert an intervening right under Section 252. Accordingly, the Court hereby STRIKES Defendant's fourth affirmative defense for intervening rights under 35 U.S.C. § 252.

### D. Reservation of Additional Defenses

Plaintiff seeks to strike Defendant's clause "reserve[ing] all defenses available under Rule 8(c) of the Federal Rules of Civil Procedure."[3] (Answer ¶ 31.) "An attempt to reserve affirmative defenses for a future date is not a proper affirmative defense in itself." *U.S. v. Global Mortgage Funding, Inc.*, No. SACV 07-1275 DOC (PJWx), 2008 WL 5264986, at * 5 (C.D. Cal. May 15, 2008). Defendants seeking to add affirmative defenses at a later date must comply with Federal Rule of Civil Procedure 15. *Id.* Defendant "is either entitled to raise additional defenses at a later time or he is not; his attempt to reserve his rights to do so is a legal nullity." *Id.* The court in *Global Mortgage* stated it was "somewhat puzzled by the [plaintiff's] request to strike this defense since it is legally ineffective and could have no impact on the proceeding." *Id.* However, for the sake of "helping [plaintiff] to rest easier," the court struck the defense. *Id.*

Likewise here, the clause reserving all affirmative defenses can have no legal effect in the answer. However, as it appears to be an issue Plaintiff wants clarified and bearing no legal effect, the Court hereby STRIKES Defendant's reservation of all affirmative defenses. Defendant may request to raise affirmative defenses at a later time in accordance with the Federal Rules and Local Rules.

---

[3] Plaintiff seeks to strike "Netlist's general reservation" of affirmative defenses. (ECF No. 67 at 17.) Plaintiff does not assert Defendant raised the reservation as an affirmative defense in itself. Likewise, the Court does not view it as such, but rather as a general reservation clause.

///

### E. Counterclaim Five: Equitable Estoppel

Plaintiff argues Defendant's fifth counterclaim for equitable estoppel should be dismissed because equitable estoppel is a defense not a claim. (ECF No. 67 at 18.) Plaintiff is correct. "Equitable estoppel is a defense, not a claim." *Resource Lenders, Inc. v. Source Solutions, Inc.*, No. 1:05CV0999OWWLJO, 2005 WL 3525670, at * 4 (E.D. Cal. Dec. 22, 2005). Defendant argues the Court should treat the pleading as if there has been a proper designation regardless of whether Defendant mistakenly designated "its counterclaim as a defense." (ECF No. 80 at 16.) Defendant asserts both a counterclaim and a defense for equitable estoppel. Therefore, it cannot be said that Defendant misclassified a counterclaim or defense. Furthermore, Defendant does not dispute that equitable estoppel is not an independent claim for relief. Because equitable estoppel is an affirmative defense, Defendant's fifth counterclaim for equitable estoppel is hereby DISMISSED with prejudice.

### IV. CONCLUSION

For the above stated reasons, the Court hereby orders as follows:

1. Defendant's third and sixth counterclaims are DISMISSED WITHOUT PREJUDICE;
2. Plaintiff's motion to strike Defendant's fifth and sixth affirmative defenses is DENIED;
3. Defendant's second counterclaim is DISMISSED WITHOUT PREJUDICE;
4. Defendant's second affirmative defense is STRICKEN;
5. Defendant's fourth affirmative defense is STRICKEN;
6. Defendant's general reservation of defenses is STRICKEN; and
7. Defendant's fifth counterclaim is DISMISSED WITH PREJUDICE.

Plaintiff shall file an amended countercomplaint within thirty (30) days of entry of this order.

IT IS SO ORDERED.

Dated: July 13, 2017

Troy L. Nunley
United States District Judge